UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Cheryl Graham,** | Civil Action No.:_____ |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| **Experian Information Solutions, Inc.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by Plaintiff, Cheryl Graham, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

8. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9. Venue is proper in the Florence Division because the Plaintiff resides in Marion County and the Defendant transacted business in this division.

## PARTIES

10. Plaintiff, Cheryl Graham, is a resident and citizen of the State of South Carolina, Marion County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11. Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12. Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14. Defendant's acts and omissions alleged herein are in violation of the Fair Credit

Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes. Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     On September 21, 2022, Plaintiff signed a System Purchase and Services Agreement with Vivint Smart Home (hereinafter referred to as "Vivint") for a security system for her elderly aunt. Plaintiff's aunt lived alone, and the security system was a way for her to feel safe in her own home. Financing for the security system was through Citizens Bank's Citizens Pay Line of Credit, Account ending 7070 (hereinafter referred to as the "Account").

17.     In December 2022, three months after the security system was installed, Plaintiff's aunt passed away.

18.     Plaintiff then contacted Vivint to inform them of her aunt's passing and to close the Account since the security system was no longer needed. Vivint referred Plaintiff to its Exception Review Team ("ERT"). Plaintiff provided Vivint's ERT with a copy of her

4

aunt's death certificate and ERT agreed to close the Account and stop all charges.

19. Thereafter, Plaintiff received a notice from ERT confirming the Account was cancelled as of February 27, 2023, and that "[a]ll billing and monitoring of your Vivint system has been disabled. – The Vivint Team"

20. On April 21, 2023, Plaintiff received an email from Vivint with a return shipping label attached for Plaintiff to return the security equipment directly to Citizens Bank.

21. On May 4, 2023, Plaintiff took the package containing the security equipment to FedEx for delivery to Citizens Bank using the shipping label provided by Vivint.

22. On May 9, 2023, Citizens Bank received the security equipment package from Plaintiff.

23. With the monitoring services cancelled, the Account closed, and the equipment returned, there should have been no further billing from Citizens Bank.

24. Unfortunately, Citizens Bank continued to bill and draft payments directly from Plaintiff's checking account.

25. In June 2023, Plaintiff went to her bank with documentation to show that the Account was closed and to stop all future attempts by Citizens Bank to draft funds from her checking account.

26. On August 10, 2023, on a three-way call with Plaintiff, a representative of Vivint told a representative of Citizens Bank that the Account was closed, and that they were not to draft any further payments.

27. On or about September 6, 2023, Plaintiff received an alert that Citizens Bank was reporting the Account as 60-days past due on her credit reports.

28.     As a result of the Account reporting as delinquent, Plaintiff's credit score dropped 108 points from 824 to 716.

29.     On October 4, 2023, Plaintiff received an email from Victoria Saunders, Executive Resolutions, Proactive Escalation Prevention Department with Vivint.  In her email, Ms. Saunders stated, "We are writing to confirm the Vivint monitoring account has already been cancelled and the line of credit has now been submitted for forgiveness and backdated to 02/27/2023," and that Plaintiff could expect a refund in up to 14-21 days.  The email went on to say Vivint was processing a payment to Citizens Bank and that the Account would reflect as paid in full on Plaintiff's credit reports.

30.     On or about October 10, 2023, Plaintiff sent a written dispute letter to Defendant ("First Dispute"), wherein Plaintiff informed Defendant of the events that led to the Account being reported incorrectly on her Experian credit report, and requested that the inaccurate late pays be removed.

31.     Defendant received Plaintiff's dispute on October 17, 2023, but never responded to Plaintiff.

32.     Defendant never investigated Plaintiff's First Dispute.

33.     On or about December 4, 2023, Plaintiff received a letter from Discover stating it was not able to provide Plaintiff an offer of credit due to a recent delinquency showing on Plaintiff's Experian, TransUnion, Clarity, and LexisNexis credit files.  Discover also informed Plaintiff that its decision was based on Plaintiff's Experian credit score, which was 678.  As a result of Defendant's failure to properly reinvestigate Plaintiff's dispute, the inaccurate, misleading Account continued to be reported on Plaintiff's Experian credit

report and Plaintiff was denied credit by Discover.

34. On or about February 12, 2024, Plaintiff obtained a new copy of her Experian credit report. The Account was reporting as Paid, Closed, and as 90 days past due as of October 2023, and was the only derogatory account on Plaintiff's Experian credit file.

35. On or about March 21, 2024, Plaintiff sent a second written dispute to Defendant ("Second Dispute"), wherein Plaintiff stated she had obtained a new copy of her Experian credit report, and it was still reporting the Account with inaccurate information. Plaintiff specifically disputed all late payments as the Account was never paid late and the months being reported as late were after the Account was closed and no payment was due.

36. Upon receipt of Plaintiff's dispute, Defendant simply forwarded same to Citizens Bank, but did no independent investigation.

37. On or about April 19, 2024, Plaintiff received the results of Defendant's investigation wherein Defendant informed Plaintiff that Citizens Bank had verified and updated its reporting of the Account. As a result, the Account continued to be reported on Plaintiff's Experian credit report as a derogatory account and as 60 days past due as of September 2023.

38. On or about April 25, 2024, Plaintiff sent a third written dispute to Defendant ("Third Dispute"), wherein Plaintiff stated she had received Experian's results of its investigation into her dispute, and the Account was still reporting incorrectly. Plaintiff specifically informed Experian that the Account was cancelled in February 2023 and that no payments were due for August and September of 2023, and thus those months should not be reporting as late.

7

39. Defendant did no investigation of Plaintiff's Third Dispute.

40. Plaintiff never received any response from Defendant to her Third Dispute.

41. On or about July 11, 2024, Plaintiff sent a fourth written dispute to Defendant ("Fourth Dispute"), wherein Plaintiff stated she had not received a response to her April 25, 2024, dispute, and that the Account continued to be reported incorrectly as past due. Plaintiff again reiterated that the Account was closed in April of 2023 and that all of the equipment was returned to Citizens Bank in May of 2023. As no payments were due for July and August of 2023, it was completely inaccurate for those months to be reporting as 30 and 60 days late. Plaintiff requested that Defendant immediately remove all of the late payments on the Account or delete the Account entirely.

42. Defendant received Plaintiff's Fourth Dispute on July 16, 2024, but did no investigation of Plaintiff's dispute.

43. Plaintiff never received a response from Defendant following her Fourth Dispute.

44. While Defendant has been publishing false and inaccurate information on Plaintiff's Experian credit reports, those reports have been viewed by Discover Financial Services, WFBNA, PLL, WFNA, JPMCB , WFBNA, Capital One, Lending Club Group, WF Card Services, Ashro/DM Services, Bank of America, Dish Network, and others.

45. To date, Defendant continues to report the Account with inaccurate, incorrect, and/or misleading information on Plaintiff's Experian credit report.

46. Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

47. For over 35 years, courts have recognized that a CRA cannot rely upon its data

8

furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

48. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

49. The Plaintiff adopts the averments and allegations of paragraphs 16 through 48 hereinbefore as if fully set forth herein.

50. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation

9

requirements in 15 U.S.C. §1681i.

51. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file. Defendant also failed to correct inaccurate information on Plaintiff's credit file.

52. Defendant repeatedly failed to reinvestigate the Plaintiff's disputes.

53. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

54. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

55. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

56. The Plaintiff adopts the averments and allegations of paragraphs 16 through 55 hereinbefore as if fully set forth herein.

57. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow

reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

58.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

59.     Defendant willfully failed to reinvestigate the Plaintiff's disputes.

60.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

61.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

62.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

63.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

64.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.  Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.  Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.  Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.  For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223